NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| Nicholas MARINIELLO, | |
| Plaintiff, | Civ. No. 14-956 |
| v. | OPINION |
| LPL FINANCIAL LLC, LPL HOLDINGS, FORTIGENT, LLC and Andrew PUTTERMAN, | |
| Defendants. | |

THOMPSON, U.S.D.J.

## I. INTRODUCTION

This matter is before the Court upon the motion to dismiss filed by LPL Financial LLC, LPL Holdings, Fortigent, LLC, and Andrew Putterman (collectively, "Defendants"). (Docket No. 8). Nicholas Mariniello ("Plaintiff") opposes this motion. (Docket No. 14). The Court has decided the matter upon consideration of the parties' written submissions and oral arguments. For the reasons given below, Defendants' motion to dismiss is granted in part and denied in part.

## II. BACKGROUND

Plaintiff was the Executive Managing Director of Concord Wealth Management ("Concord"). (Docket No. 1, Pl.'s Compl., at ¶ 8). Concord provided technology and investment solutions to trust departments of financial institutions. (*Id*.). In June 2011, LPL Holdings, Inc. ("LPL Holdings") acquired Concord through a stock purchase agreement (the "SPA"). (*Id*. at 9). LPL Holdings is the parent corporation of LPL Financial. (*Id*. at 9). In conjunction with the sale of Concord to LPL Holdings, Plaintiff became employed by LPL Financial as a senior vice president. Plaintiff continued to work out of the Matawan office that

previously housed Concord. (*Id*. at 11). The entity formed following the acquisition of Concord by LPL Holdings will hereafter be referenced as Concord-LPL.

Plaintiff was employed by LPL Financial pursuant to an employment agreement (hereinafter, the "Employee Agreement"). (*Id*. at 12). Under the terms of the Employment Agreement, Plaintiff was to receive a salary and participate in an incentive bonus pool. (*Id*. at 13). The amount of money to be placed in the bonus pool was to be based on the revenue generated by Concord-LPL in the years 2011, 2012, and 2013. (*Id*. at 13).

Plaintiff claims that Defendants made a number of representations about LPL Financial's computer systems during negotiations of the Employment Agreement. Specifically, Plaintiff claims that LPL Financial failed to acknowledge that their computer systems were incapable of providing custody services for large financial institutions. (*Id*. at 18). Plaintiff claims that without custody-oriented computer system modifications, Plaintiff could not serve target institutions in a profitable way. (*Id*. at 18). Plaintiff complained repeatedly to LPL Financial's executives about the need for computer system upgrades that would allow Concord-LPL to fully integrate with LPL Financial and provide custody services to large financial institutions. (*Id*. at 22).

In April 2012, Fortigent, LLC ("Fortigent") became affiliated with LPL Holdings. (*Id*. at 25). Andrew Putterman was the principal officer of Fortigent. (*Id*. at 25). Plaintiff subsequently began reporting to Putterman. (*Id*. at 26).

In April 2013, Plaintiff and two other former Concord executives brought a lawsuit against LPL Financial in the Court of Chancery in the State of Delaware. (*Id*. at 29). In August 2013, Plaintiff was informed by Putterman that he was no longer allowed to work in the Matawan office. (*Id*. at 31). Plaintiff was required to work from home remotely and only

allowed to come to the Matawan office if he asked for permission from Putterman twenty-four hours in advance. (*Id*. at 31). Putterman provided Plaintiff with no explanation for the changes. (*Id*. at 32). Plaintiff informed Putterman that he did not have the proper resources to work from home, but Plaintiff attempted to fulfill his responsibilities from home to the best of his ability. (*Id*. at 33-34).

As part of the SPA, Concord agreed to indemnify LPL Holdings for legal fees stemming from litigation that commenced prior to LPL Holdings' acquisition of Concord. (*Id*. at 41). One such indemnifying claim was for disputed legal fees owed to the law firm Wiggin and Dana. (*Id*. at 46). On December 16, 2013, Plaintiff received a letter from Gregory M. Woods, Deputy General Counsel at LPL Financial, stating that Plaintiff had five days to pay the outstanding Wiggin and Dana balance or be subject to termination for cause. (*Id*. at 51). Plaintiff responded that Wiggin and Dana's legal fees remained an issue of contention and further rejected Woods' interpretation of the SPA. (*Id*. at 52).

On Saturday, December 28, 2013, Plaintiff received a letter from LPL Holdings stating that Plaintiff had been terminated "for cause." (*Id*. at 54). The "cause" for Plaintiff's termination was not stated in the letter. (*Id*. at 54). Plaintiff was informed by the Human Resources department that because he was terminated for cause, all of his stock options were cancelled. (*Id*. at 57). Plaintiff was also informed that he was not entitled to his pro-rata bonus

for 2013 because of his "for cause" termination.  (*Id*. at 58).

Based on the foregoing allegations, Plaintiff alleges six claims for relief:

(i) violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1;

(ii) breach of the Employment Agreement;

(iii) breach of contract;

(iv) a declaration that the restrictive covenant is null and void; and

(v) tortious interference.

### III. DISCUSSION

**A.** *Legal Standards*

Defendants move to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  A motion under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint.  *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  The defendant bears the burden of showing that no claim has been presented.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  When considering a Fed. R. Civ. P. 12(b)(6) motion, a district court should conduct a three-part analysis.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  First, "the court must 'take note of the elements a plaintiff must plead to state a claim.'"  *Id*. (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)).  Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).  The court may disregard any conclusory legal allegations.  *Id*.  Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a plausible claim for relief."  *Id*.  Such a claim requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of

misconduct." *Id*. Instead, the facts must allow a court reasonably to infer "that the defendant is liable for the misconduct alleged." *Id*.

**B.** *Analysis*

Plaintiff's Complaint alleges five claims for relief. Each claim for relief is addressed individually below.

**i.** *Violation of the Conscientious Employee Protection Act*

The Conscientious Employee Protection Act ("CEPA"), prohibits a New Jersey employer from taking "retaliatory action against an employee who objects to 'any activity, policy or practice which the employee reasonably believes' is in violation of applicable law." *Fronczkiewicz v. Magellan Health Services*, 11 Civ. 7542, 2012 WL 2357484, at *3 (D.N.J. June 20, 2012) (citing N.J.S.A. 34:19-3(c)(1)). To establish a prima facie case under CEPA, a plaintiff "must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19–3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Caver v. City of Trenton*, 420 F.3d 243, 254 (3d Cir. 2005) (quoting *Dzwonar v. McDevitt,* 177 N.J. 451 (2003)). Plaintiff alleges that he is entitled to relief under CEPA for whistle-blowing activity related to the following issues: (1) LPL Financial's and LPL Holdings' fraudulent public statements; and (2) embezzlement perpetrated by an LPL Holdings' accounting department representative. (Docket No. 1, Pl's Compl., at ¶ 59-67).

**1.** *Fraudulent public statements*

With respect to Plaintiff's claim that he is entitled to CEPA relief for whistle-blowing activity related to LPL Financial's and LPL Holdings' fraudulent public statements, Plaintiff fails to adequately allege that he reasonably believed that his employer's conduct was violating "a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy." *See Caver*, 420 F.3d at 254.  Plaintiff asserts that LPL Financial engaged in illegal conduct through "fraudulent" public statements concerning its ability to provide custody services. Plaintiff's Complaint contains the following allegations regarding Defendant's fraudulent statements and activities:

> Significantly, the public, including customers, prospective customers and investors were also informed that LPL Financial had the ability to custody assets for large institutions.  For example, LPL Holdings' website, in July 2013, asked potential customers "to fully outsource" their "clearing operations with confidence."  LPL advised that "[w]ith our unique approach to clearing, Custom Clearing Services tailors solutions to the specific needs of the broker/dealer organization."  Generally, in the financial services industry, a company that provides clearing services also custodies assets as well.
>
> Press releases made by LPL Holdings at or about the time of the acquisitions further informed the public of LPL Financial's new capabilities as a result of Concord's added skills and resources.
>
> a.)    A press release issued by LPL Holdings on April 20, 2011, stated "As a result of this acquisition, LPL Financial will have the ability to support both the brokerage and trust business lines of current and prospective financial institution partners.  This unique combination of offerings will create an integrated wealth management solution for financial institutions that the company believes will redefine the market."  The press release went on to state that Concord's open architecture platform would fit with "LPL's business model" and would allow Concord's customers to have access to a broad range of quality investment options and custodial services for their clients.
>
> b.)    The president and managing director for LPL Financial's Institution Services Division was quoted as saying that the transaction "will significantly expand the services and support we can offer the trust departments of our existing financial institution customers and create multiple new expansion opportunities for us in this space.

    c.)    In June 2011, a bank reported: "LPL has typically worked with banks in the brokerage and advisory areas, but not in trust. That will change with the Concord Wealth Management acquisition. LPL has 300-plus banks with trust powers- roughly half of its client institutions- and most of them will be able to profit from Concord's technology and 'open architecture' investment management solutions, LPL Divisional President Dan Arnold told us."

    d.)    An LPL Financial officer, in another public comment said: "LPL already provides investment platforms to banks and credit unions and this acquisition will give the firm an entry into these institutions' trust departments as well."

    e.)    In another press release, LPL explained that "Concord's proprietary software solution, which creates numerous efficiencies in the administration of trust accounts for its clients, 'was consistent with LPL's' approach to providing seamless integration of service offerings to our customers."

(Docket No. 1, Pl.'s Compl., ¶ 16-17).

The Court is not persuaded that the statements in the Complaint constitute "material misrepresentation[s] of a presently existing or past fact" that customers or clients would rely upon to their detriment. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997) (setting forth material misrepresentation and other elements of common law fraud). Given the vague nature of the statements cited by Plaintiff, the Court does not find that the conduct in the Complaint ascribed to LPL Financial was illegal or in violation of any public policy. *See Blackburn v. United Parcel Serv., Inc.*, 3 F. Supp. 2d 504, 515 (D.N.J. 1998) *aff'd,* 179 F.3d 81 (3d Cir. 1999) ("CEPA does not merely require that the employee subjectively believe that certain activities have taken or are about to take place. In order for an employee's belief to be considered reasonable, that belief must be such that a reasonable lay person would conclude that illegal activity was going on or, at the very least, is imminent.").

    **2.** *Employee embezzlement*

Plaintiff additionally alleges that in November 2013, Plaintiff and another LPL Financial employee informed management that an LPL Financial employee "embezzled over $75,000 from

two of Concord-LPL's business banking accounts." (Docket No. 1, Pl.'s Compl., at ¶ 35). The Complaint alleges that LPL Holdings told Plaintiff that it would reimburse Plaintiff for these losses if he "did not report the embezzlement to law enforcement officials." (*Id*. at ¶ 36). Defendants provided the Court with an email exchange that contradicts Plaintiff's allegations. (Docket No. 9, Ex. C). *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 405-06 (S.D.N.Y. 2001) (A court need not credit allegations "that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely."); *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (Where documents "contradict the Complaint's factual allegations, the documents will control."). The email exchange between LPL Holdings and Plaintiff indicates that LPL Holdings was investigating the embezzlement allegations and would reimburse the victimized entity "regardless" of whether Plaintiff or his colleagues reported the matter to the "authorities." (Docket No. 9, Ex. C).

Regardless of the accuracy of Plaintiff's allegations in the Complaint, the embezzlement allegation does not satisfy the reasonable-belief element of a CEPA claim, which requires that an employee have a reasonable belief that his or her employer was violating "a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy." N.J.S.A. 34:19-3a (prohibiting retaliatory action against an employee who "[d]iscloses, or threatens to disclose to a supervisor . . . an activity, policy, or practice of the employer"); *Maw v. Advanced Clinical Commc'ns, Inc.*, 179 N.J. 439, 445 (2004) ("CEPA is designed to prevent retaliation against those employees who object to employer conduct . . ."). The embezzlement allegation does not assert that LPL Financial was guilty of embezzlement, but that an LPL Financial affiliate (Concord) was the victim of embezzlement. (Docket No. 1, Pl.'s Compl., at ¶ 35). For this reason, a CEPA claim may not rest on the embezzlement allegation.

Furthermore, CEPA does not apply to private disagreements between an employer and employee. *See Maw,* 179 N.J. at 608 ("We reaffirm the limiting principle . . . that the complained of activity must have public ramifications, and that the dispute between the employer and employee must be more than a private disagreement."). The Court finds that Plaintiff's embezzlement allegation does not involve the public interest. *Littman v. Firestone Tire & Rubber Co.*, 715 F. Supp. 90, 93 (S.D.N.Y. 1989) (applying New Jersey CEPA law and holding that where the corporate employer is the victim of alleged fraud, plaintiff fails to plead a CEPA claim because the statute "is concerned primarily with illegal activity which harms the public").

For the reasons set forth above, Plaintiff's CEPA claim will be dismissed. *Caver,* 420 F.3d at 254.

**ii.** *Breach of the Employment Agreement and Breach of Contract*

In Count II of the Complaint, Plaintiff asserts that LPL Financial breached his Employment Agreement by terminating him "without Cause" and then not paying him severance benefits. (Docket No. 1, Pl.'s Compl., at ¶¶ 68-74). In Count III of the Complaint, Plaintiff asserts that LPL Financial breached his Employment Agreement by cancelling his stock options and failing to provide a pro-rata 2013 bonus due to LPL Financial's claim that Plaintiff was terminated "for cause." (*Id*. at 75-79).

To survive a motion to dismiss, a plaintiff alleging breach of contract must allege facts showing the following: (1) a valid contract existed; (2) a breach of that contract occurred; (3) the plaintiff performed his or her obligations under the contract; and (4) the plaintiff suffered damages as a result of the breach. *See VideoPipeline, Inc. v. Buena Vista Home Entm't, Inc.*, 275 F. Supp. 2d 543, 566 (D.N.J. 2002), *aff'd*, 342 F.3d 191 (3d Cir. 2003) (applying New Jersey law).

Here, Defendants claim that Plaintiff has failed to adequately allege a breach of the Employment Agreement.  (Docket No. 8, Defs. Br. at 12).  The Court disagrees.  Plaintiff's Complaint adequately claims that he may be entitled to relief for termination without cause.  Plaintiff's Employment Agreement and the Stock Purchase Agreement are both cited in the Complaint and provide a definition of termination "without cause."  (Docket No. 1, Pl.'s Compl.).  *See also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) ("In evaluating a motion to dismiss, we may consider . . . any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case.") (internal citations omitted).  The Complaint sets forth enough facts, claiming that Plaintiff's termination may have been without cause, to survive Defendants' motion to dismiss.

Based on the allegations in the Complaint, the Court finds that Defendants have been adequately placed on "notice of what . . . [Plaintiff's] claim is and the grounds upon which it rests."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (citing *Twombly,* 127 S.Ct. at 1964).  Therefore, Defendants' motion to dismiss with respect to Count II and III will be denied.

### iii. *Declare restrictive covenant null and void*

Count IV relates to a restrictive covenant in the Stock Purchase Agreement that "bars Mariniello from competing with LPL in the United States and Canada for a period of the earlier of five years from the closing date or eighteen months after termination."  (Docket No. 1, Pl.'s Compl., ¶ 81).  Plaintiff seeks a declaratory judgment declaring the restrictive covenant null and void.  (*Id*. at ¶¶ 80-84).

Where, as here, a non-compete clause is ancillary to the sale of a business, it is "freely enforceable." *Laidlaw, Inc. v. Student Transp. of Am., Inc.*, 20 F. Supp. 2d 727, 754 (D.N.J. 1998) (quotation marks and citations omitted); *Meadox Med., Inc. v. Life Sys., Inc.*, 3 F. Supp. 2d 549, 552 n.2 (D.N.J. 1998) ("New Jersey courts freely enforce restrictive, covenants against sellers of businesses . . . . In such a case, the buyer is in essence purchasing the seller's customer relationships outright. The restrictive covenant protects the buyer's bargained for assurance that the seller will not retain that which he has sold."). In New Jersey, a covenant not to compete "will be given effect if it . . . protects the legitimate interests of the employer, imposes no undue hardship on the employee, and is not injurious to the public." *Whitmyer Bros., Inc. v. Doyle*, 58 N.J. 25, 32-33 (1971).

Here, the Complaint offers the following justification for nullifying the restrictive covenant:

> Such covenant effectively bars Mariniello from making a living in that the business of Concord is the business he knows and has worked in for the past twenty (20) years.
> Imposition is especially appropriate in that it was LPL which failed to fulfill the representation which led Mariniello to execute the Employment Agreement.
> By Law, LPL's breaches, misrepresentations and other unlawful conduct should release any restriction upon Mariniello's future employment.

(Docket No. 1, Pl.'s Compl., ¶¶ 82-84). Accepting Plaintiff's allegation in the Complaint as true, Defendants' motion to dismiss Plaintiff's request for a declaratory judgment will be denied. *See Whitmyer Bros., Inc.*, 58 N.J. at 32-33.

**iv.** *Tortious interference*

Defendants seek to dismiss Plaintiff's claim for tortious interference with contract. An action for tortious interference with contract protects "parties to an existing . . . contractual relationship from outside interference." *Printing Mart-Morristown v. Sharp Electronics Corp.*,

116 N.J. 739, 752-53 (1989).  To state a claim for tortious interference with contract, a plaintiff must plead facts plausibly suggesting actual interference with a contract by a defendant who is not a party to the contract.  *Dello Russo v. Nagel*, 358 N.J. Super. 254, 268 (App. Div. 2003).  This requirement exists because a party to a contract cannot be held liable "both for breach of that contract and for inducing that breach."  *Shearin v. E.F. Hutton Grp., Inc.*, 652 A.2d 578, 591 (Del. Ch. 1994).

Here, Plaintiff is suing Fortigent and Putterman for interfering with a contract between Plaintiff and LPL Financial.  As a preliminary matter, the Court must determine whether Defendants Fortigent and Putterman qualify as third parties that are legally capable of interfering with LPL Financial's contracts.  The court will analyze Defendants Fortigent and Putterman individually.

**1.** *Fortigent*

Plaintiff claims Fortigent interfered with a contract between Plaintiff and LPL Financial.  Fortigent is a corporate affiliate of LPL Holdings and LPL Financial.  (Docket No. 8, Defs.' Br. at 19, n. 13).  The question before the court is whether a company can interfere with the contracts of its corporate affiliates.  There is an absence of on-point New Jersey case law analyzing this issue.  Therefore, the Court looks to Delaware law to analyze this issue.  *IBS Fin. Corp. v. Seidman & Associates, L.L.C.*, 136 F.3d 940, 949-50 (3d Cir. 1998) ("When faced with novel issues of corporate law, New Jersey courts often look to Delaware's rich abundance of corporate law for guidance.").

Under Delaware law, "where corporations affiliated through joint ownership confer with respect to a contract to which one of them is party and a breach of that contract follows, there can be no non-contractual liability to the affiliated corporation, which is privileged to consult and

counsel with its affiliates, unless the plaintiff pleads and proves that the affiliate . . . sought maliciously or in bad faith to injure plaintiff." *Shearin*, 652 A.2d at 591. When considering bad faith in tortious interference with contract cases, New Jersey courts consider the following factors: "the nature of and motive behind the conduct, the interests advanced and interfered with, societal interests that bear on the rights of each party, the proximate relationship between the conduct and the interference, and the relationship between the parties." *Nostrame v. Santiago*, 213 N.J. 109, 122 (2013).

Thus, under Delaware law, as corporate affiliates, Fortigent, LPL Holdings, and LPL Financial are privileged to confer "with respect to a contract to which one of them is a party." *See Shearin*, 652 A.2d at 591. Fortigent cannot be held liable for tortuously interfering with LPL Financial's contracts unless Plaintiff pleads facts suggesting Fortigent "sought maliciously or in bad faith to injure" Plaintiff. *See id*.

Plaintiff's Complaint states the following with respect to Fortigent's alleged bad faith:

> Fortigent and Putterman acted maliciously and in bad faith to injure the [sic] Mariniello with the intent to cause the breach by LPL Financial of the Employment Agreement.

(Docket No. 1, Compl. at ¶ 88). Plaintiff's conclusory statement does not include any factual allegations suggesting that Fortigent sought, in bad faith, to injure Plaintiff. *See Iqbal*, 556 U.S. at 679. Because Plaintiff has not adequately pleaded facts showing that Fortigent intended to interfere with Plaintiff's contract in bad faith, Fortigent cannot be held liable for tortuously interfering with its corporate affiliate's contracts. Therefore, Defendants' motion to dismiss Plaintiff's claim for tortious interference with contract, with respect to Fortigent, will be granted.

**2.** *Andrew Putterman*

Plaintiff claims Andrew Putterman, Fortigent's CEO, interfered with a contract between Plaintiff and LPL Financial. In New Jersey, "a clear-cut consensus has emerged that if an employee or agent is acting on behalf of his or her employer or principal, then no action for tortious interference will lie." *DiMaria Const., Inc. v. Interarch*, 351 N.J. Super. 558, 568 (App. Div. 2001). The Third Circuit has held that an employee falls outside the scope of his employment if the employee "acts for personal motives, out of malice, beyond his authority, or otherwise not in good faith in the corporate interest." *Varrallo v. Hammond Inc.,* 94 F.3d 842, 849 n. 11 (3d Cir. 1996).

Here, Plaintiff has not alleged any facts suggesting that Putterman acted "for personal motives, out of malice, beyond his authority, or otherwise not in good faith in the corporate interest." *Varrallo,* 94 F.3d at 849 n. 11. Thus, Putterman cannot be held individually liable for tortious interference with contract. Therefore, Defendants' motion to dismiss Plaintiff's claim for tortious interference with contract, with respect to Putterman, will be granted.

## IV. CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss will be granted in part and denied in part. An appropriate order will follow.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

Date: 8/5/14